1

2

3

4                    **UNITED STATES DISTRICT COURT**
                          **DISTRICT OF NEVADA**
5                           **RENO, NEVADA**

6

7

8   IN RE: WASHINGTON GROUP       )    3:10-cv-00785-ECR-RAM
    INTERNATIONAL, INC., et al.,  )
                                  )    BAP No. NV-10-1481
9   GROUND IMPROVEMENT TECHNIQUES, )
    INC.,                         )
10                                )
        Appellant,                )
11                                )
    vs.                           )    **Order**
12                                )
    THE PLAN COMMITTEE, et al.,   )
13                                )
        Appellees.                )
14                                )
                                  )
15

16       This case is an appeal from the order of the bankruptcy court,

17   docketed on August 4, 2010, which precluded Appellant from

18   collecting post-judgment interest on a judgment which the United

19   States Department of Energy ("DOE") is obligated to pay.  The

20   question presented by the appeal is whether the bankruptcy court

21   erred in finding that 11 U.S.C. § 502(b)(2) prevents Appellant from

22   collecting post-petition interest from the DOE, a non-debtor.

23

24                **I. Factual and Procedural Background**

25       In 1983, the DOE hired Washington Group International, Inc.'s

26   ("WGI") predecessor, Morrison-Knudsen Corporation ("MK"), to manage

27   a project for the cleanup of radioactive mill tailings.

28   (Appellant's Appendix ("AA") 846.)  MK subcontracted with Ground

Improvement Techniques, Inc. ("GIT" or Appellant) to clean up the
Slick Rock, Colorado site. (Id.)  The project encountered problems,
and in September 1995, MK terminated the subcontract and sued GIT
for damages in the District of Colorado. (Id.)  GIT counterclaimed
for wrongful termination. (Id.)  The case went to trial in November
1996, and the jury found in favor of GIT for wrongful termination
and awarded GIT $5.6 million. (AA 847.)  MK appealed, and the Tenth
Circuit Court of Appeals affirmed the ruling on liability, but
remanded the matter for a new trial on damages. (AA 874.)

On May 14, 2001, WGI and other related entities filed petitions
under Chapter 11, Title 11 of the United States Code in the United
States Bankruptcy Court for the District of Nevada, Reno Division
(Case No. BK-N-01-31627).  The second trial on damages was stayed by
the bankruptcy filing.  On August 24, 2001, GIT moved for relief
from the automatic stay to allow a retrial on the issue of damages,
contending that "any damages shall be paid directly from credit
and/or property of the [DOE] and not from property of the Debtor's
bankruptcy estate." (AA 899-906.)  The bankruptcy court granted
GIT's request for relief from the automatic stay for a retrial on
damages. (AA 909-916.)

By December 21, 2001, WGI's Second Amended Joint Plan of
Reorganization ("the Plan") was confirmed. (AA 71.)  The Order
confirming the Plan provided, *inter alia*, that "[n]otwithstanding
anything in the Plan or this Order to the contrary, Ground
Improvement Techniques, Inc. may continue its litigation to final
judgment and final confirmation of the Plan will not affect the

2

1  rights of Ground Improvement Techniques, Inc. other than the
2  statutory discharge granted to the Debtors." (AA 105.)

3      At the retrial in May 2006, the jury awarded GIT over $15
4  million in damages. (AA 882.) GIT collected approximately $7.8
5  million against the supersedeas surety. (Appellant's Opening Br. at
6  10 (#16).) A Second Modified Amended Judgment was rendered
7  adjudicating $9,842,711.00 in yet unsatisfied principal plus post-
8  judgment interest (from August 16, 2006) in favor of GIT. (AA 977-
9  981.)

10     In May 2010, WGI's Plan Committee asked the bankruptcy court to
11 direct GIT and reorganized WGI to first seek collection from the DOE
12 for any principal amounts that could also be recoverable against the
13 Plan Committee's Creditor's Trust. (AA 814.) GIT joined in the
14 motion and sought authority to collect directly against the DOE the
15 full amount of principal, but objected to the extent that the Plan
16 Committee requested that GIT should not be allowed to collect
17 interest on its judgment. (AA 960.) The bankruptcy court granted
18 the Plan Committee's motion and adopted GIT's joinder relief in
19 part, but limited GIT's direct collection against the DOE to the
20 principal judgment amount of $9,842,711.83. (AA 1380.)
21 Specifically, the bankruptcy court precluded GIT from collecting the
22 award of accruing interest from the DOE. (Id.)

23     On August 4, 2010, the bankruptcy court mandated certification
24 and collection by GIT of the principal sum of GIT's judgment against
25 the DOE. (AA 1377, 1385.) GIT is authorized to certify, prosecute,
26 and directly collect the principal judgment award against the DOE,
27 but not the accruing interest. (AA 1383, 1387.)

28                                    3

1    On August 17, 2010, GIT filed a Motion for Reconsideration (AA
2 1390) requesting that the bankruptcy court reconsider its ruling
3 that GIT may not collect post-judgment interest from the DOE.  The
4 bankruptcy court denied GIT's motion on November 15, 2010.  (AA
5 1563.)  GIT appealed.

6    On December 17, 2010, the appeal was transferred to this Court
7 by election of a party to the appeal (#1).  On February 1, 2011,
8 Appellant filed its Opening Brief (#16).  On February 22, 2011,
9 Appellees filed their Answering Brief (#20).  On March 8, 2011,
10 Appellant filed its Reply Brief (#21).  On the same date, Appellant
11 filed its Motion for Hearing (#22).  A hearing on the appeal was
12 held on September 26, 2011.

14                        **II. Jurisdiction**

15    United States District Courts have jurisdiction to hear appeals
16 from "final judgments, orders, and decrees" of the bankruptcy court
17 pursuant to 28 U.S.C. § 158(a)(1), as well as certain interlocutory
18 orders described in 28 U.S.C. § 158(a)(2).  A party may also, "with
19 leave of the court," appeal from other interlocutory orders and
20 decrees pursuant to 28 U.S.C. § 158(a)(3).  See In re City of Desert
21 Hot Springs, 339 F.3d 782, 787 (9th Cir. 2003) (noting that the
22 district court must hear appeals from final decisions of the
23 bankruptcy courts, but it is within the discretion of the district
24 court to hear appeals of interlocutory orders).

25    Here, the bankruptcy court's order constitutes a final order
26 within the meaning of 28 U.S.C. § 158(a)(1) because it represents
27 the bankruptcy court's final resolution of the parties' rights with

28                                4

1  regard to Appellant's claim for post-petition interest.  <u>See id.</u> at

2  788 (describing the Ninth Circuit's "'pragmatic' approach to

3  deciding whether orders in bankruptcy cases are final, 'recognizing

4  that certain proceedings in a bankruptcy case are so distinct and

5  conclusive either to the rights of individual parties or the

6  ultimate outcome of the case that final decisions as to them should

7  be appealable as of right.'") (quoting <u>In re Mason</u>, 709 F.2d 1313,

8  1317 (9th Cir. 1983)).  As such, we have jurisdiction over the

9  appeal pursuant to section 158(a).

10

11                    **III. Standard of Review**

12       We review the bankruptcy court's application of the Bankruptcy

13  Code to the Plan <i>de novo</i>.[1]  <u>See Temecula v. LPM Corp. (In re LPM</u>

14  <u>Corp.)</u>, 300 F.3d 1134, 1136 (9th Cir. 2002).

15

16  _____

17       [1] The bankruptcy court held that "[t]he post-judgment interest
awarded by the Colorado District Court in connection with the Judgment
18  is unmatured interest as of the Petition Date.  Unmatured interest is
not allowable under Bankruptcy Code Sec 502(b)(1) and pursuant to
19  Article 7.2 of the Plan as previously found by this Court and upheld
on appeal by the United States District Court for the District of
20  Nevada."  (AA 1380-81.)  To the extent that our Order reviews the
bankruptcy court's interpretation of its confirmation order and the
21  Plan itself, a more deferential abuse of discretion review may be
appropriate, though neither the Ninth Circuit Court of Appeals nor the
22  Ninth Circuit BAP has ruled on the issue.  <u>See, e.g.</u>, <u>Travelers Indem.</u>
<u>Co. v. Bailey</u>, 129 S. Ct. 2195, 2204 n.4 (2009) (noting that
23  "[n]umerous Courts of Appeals have held that a bankruptcy court's
interpretation of its own confirmation order is entitled to
24  substantial deference" and collecting cases); <u>but see</u> <u>In re</u>
<u>Consolidated Water Utilities, Inc.</u>, 217 B.R. 588, 590 (B.A.P. 9th Cir.
25  1998) (discussing Ninth Circuit case law that may suggest deference
should not be given).  However, the arguments presented to this Court
26  have focused on the bankruptcy court's interpretation of § 502(b)(2)
rather than on the court's interpretation of the Plan, and therefore
27  we apply a <i>de novo</i> standard of review.

28                              5

# IV. Discussion

Appellant asserts that the bankruptcy court incorrectly applied 11 U.S.C. § 502(b)(2) in disallowing post-petition interest on its judgment against the DOE.  Section 502(b)(2) provides that the court should disallow claims for unmatured interest.  Appellant argues that because its claim for post-petition interest is against the DOE, and not the bankruptcy estate, § 502(b)(2) does not apply, and furthermore, the bankruptcy court violated 11 U.S.C. § 524(e) by discharging the DOE from its independent obligation owed to Appellant.

The bankruptcy court in this case relied on a previous decision by this Court.  In Hathaway v. Raytheon Engineers & Constructors, Inc. (In re Washington Group International, Inc.), we ruled that tort claimants who had obtained a judgment against a Chapter 11 debtor in a personal injury suit could not collect post-petition interest from the debtor's insurer.  432 B.R. 282 (D. Nev. 2010). While examining the present case, we reconsidered our analysis in Hathaway and have found reason to question our prior holding.[2]

## A. Policy Reasons Behind 11 U.S.C. § 402(b)

In 1964, the United States Supreme Court explained that "[t]he basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate are the avoidance of unfairness as

---

[2] Let us be the first to acknowledge that the bankruptcy judge was certainly appropriately entitled to rely on our previous published decision on this issue.  We regret having misled our colleague. Judges are generally reluctant to reverse prior decisions for reasons of personal pride and because it undermines confidence in and reliance on our decisions.  I have often said it takes a real judge to admit that he is wrong.  There is, however, an overriding obligation to do justice and that we apply.

6

between competing creditors and the avoidance of administrative inconvenience." Bruning v. United States, 376 U.S. 358, 362 (1964).[3]  The Supreme Court quoted American Iron & Steel Manufacturing Company v. Seaboard Air Line Railway to explain that the rule against post-petition interest "is not because the claims had lost their interest-bearing quality during that period, but is a necessary and enforced rule of distribution, due to the fact that . . . assets are generally insufficient to pay debts in full." Bruning, 376 U.S. at 362 n. 4 (quoting American Iron & Steel, 233 U.S. 261, 266 (1911)).   The first reason behind disallowing post-petition interest, the concern about fairness among creditors, lies in the fact that some debts may carry a high rate of interest and some a low rate.  Id.  Allowing post-petition interest would then result in inequality in the payment of interest accrued during the delay incident to bankruptcy proceedings.  Id.  The Supreme Court also quoted American Iron & Steel for the proposition that interest should be paid if the estate proves solvent.  Id.  The Supreme Court's hint that a solvent estate should pay post-petition interest lends credence to the idea that the rule against post-petition interest is not in any way a judgment on the merits of post-petition interest, but merely a rule of distribution meant to maximize fairness in bankruptcy.  See id.  In accordance with the note in Bruning, lower courts have ruled that solvent estates should pay

---

[3] While Bruning was decided before the Bankruptcy Reform Act of 1978, courts continue to apply the reasoning in Bruning to cases arising under § 502(b)(2) of the Bankruptcy Reform Act of 1978.  See, e.g., Leeper v. Pennsylvania Higher Educ. Assistance Agency, 49 F.3d 98, 104-05 (3d Cir. 1995); Metro Commercial Real Estate, Inc. v. Reale, 968 F. Supp. 1005, 1007-08 (E.D. Pa. 1997).

post-petition interest despite § 502(b)(2).  See, e.g., In re Fast, 318 B.R. 183, 190 (Bankr. D. Colo. 2004); see also United States v. Alaska National Bank of the North, (Matter of Walsh Constr., Inc.), 669 F.2d 1325, 1330 (9th Cir. 1982) (noting that one exception to the rule against post-petition interest is when the alleged bankrupt proves solvent).

Appellee suggests that allowing the collection of post-petition interest implicates concerns about fairness among creditors.  We reject this argument, however, because our reading of Bruning is that the fairness among creditors is only a concern when the estate is insolvent, and the creditors would be paid interest out of the estate, thereby reducing the recovery of certain creditors with low interest rate debts compared to creditors with high interest rate debts.  This interpretation is bolstered by the fact that 11 U.S.C. § 506(b) provides that an oversecured creditor is entitled to interest on its claim.  Section 506(b) is an exception to the prohibition against post-petition interest provided in § 502(b)(2).[4] As in the oversecured creditor example, allowing GIT to collect post-petition interest from a third-party non-debtor, the DOE, does not implicate questions of fairness among creditors.  Collection from a third party cannot reduce the available funds in the estate for other creditors.  There is no dispute that a creditor can obtain payment from a third party such as an insurance company or a

---

[4] Because we ultimately determine that § 502(b)(2) applies only to claims against the estate, the fact that there is no express exception applicable to guarantors, insurance companies, or third-party non-debtors in general, is not fatal to our conclusion that GIT is entitled to collect post-petition interest from the DOE.

8

guarantor.  Allowing post-petition interest when the third party is obligated to pay, and can make the payment in full, does not detract from other creditors.

Of course, the question then becomes, what if the third-party non-debtor cannot pay in full?  If the third party can only pay, for example, money to cover interest and only part of the principal, should the creditor then be allowed to make a claim against the estate for the remainder of the principal, and thereby reduce the available funds in the estate and negatively impact fairness among creditors, in a way that it would not be able to do if the creditor could not collect post-petition interest from the third party?  This precise question was answered by the Court of Appeals for the Fourth Circuit in 2007.  See In re Nat'l Energy & Gas Transmission, Inc., 492 F.3d 297 (4th Cir. 2007).  In that case, a creditor obtained partial payment from a guarantor of the debtor, attempted to apply that payment to post-petition interest before applying the remainder to partial satisfaction of principal, and then tried to collect the remainder of the principal from the bankruptcy estate.  Id. at 300. The question of whether post-petition interest may be collected from a guarantor was not before the Fourth Circuit, which accepted that a guarantor is liable for post-petition interest based on prior caselaw.  Id. at 303 n. 5.  The Fourth Circuit ruled that the creditor could not classify payment from a non-debtor guarantor as non-principal and thus preserve the full value of the principal for collection in bankruptcy when the guarantee is insufficient to cover

both principal and interest.[5]  <u>Id.</u> at 303.  The Fourth Circuit did
not rule that a creditor is prohibited from collecting post-petition
interest from the third-party guarantor, it merely held that the
creditor could not apply the payment from the guarantor to interest
first when the payment was insufficient to cover both principal and
interest, and then attempt to collect the principal from the estate,
because § 502(b)(2) prevents the creditor from collecting post-
petition interest from the estate.   <u>Id.</u>

 <u>In re National Energy</u> shows that simply allowing the collection
of post-petition interest from non-debtors will not result in the
collection of post-petition interest from the bankruptcy estate,
even if the non-debtor payment is insufficient to cover both
principal and interest and the creditor may still have claims
against the bankruptcy estate.  Furthermore, in our case, it has not
been shown that there is anything but the most hypothetical
suggestion that GIT would not be compensated in full by the DOE and

---

  [5] Judge Duncan filed a scathing dissent to <u>In re National Energy</u>,
stating that "it is also well-settled that § 502(b)(2) has no impact
on the accrual of unmatured interest against non-debtors, including
non-debtor guarantors."   <u>Id.</u> at 304 (Duncan, J., dissenting)
(citations omitted).  Judge Duncan suggests that the majority's
approach in <u>In re National Energy</u> undermines not only the idea that
§ 502(b)(2) only operates on claims against the bankruptcy estate and
not third parties, but also § 524(e), which provides that the
discharge of a debt of the debtor does not affect the liability of any
other entity on such debt.  <u>Id.</u> at 305 (Duncan, J., dissenting).  He
further concludes that a creditor's receipt of payment from a non-
debtor guarantor does not implicate fairness as between competing
creditors or administrative inconvenience.  <u>Id.</u>  While the question
of the proper allocation of a non-debtor's payment to principal or
interest is not before us, we note that only allowing a creditor post-
petition interest when the third party can satisfy the debt in full,
including interest, mirrors § 506(b)'s provision that a secured
creditor may collect post-petition interest when his collateral is of
sufficient value to satisfy principal and interest.

10

1   would have to seek collection from the bankruptcy estate.  Even if

2   that unlikely scenario comes to pass, it is undisputed that GIT

3   cannot collect post-petition interest from the estate.  Merely

4   allowing GIT to collect that interest from a third party does not

5   negatively affect the available funds in the estate, and therefore

6   cannot result in unfairness among creditors.[6]

7       The second reason for disallowing post-petition interest, that

8   of the avoidance of administrative inconvenience, has been explained

9   as follows.  Disallowing post-petition interest avoids

10  administrative inconvenience "by ensuring that it is 'possible to

11  calculate the amount of claims easily.'" In re Kielisch, 258 F.3d

12  315, 321 (4th Cir. 2001) (quoting In re Hanna, 872 F.2d 829, 830

13  (8th Cir. 1989)).  Appellees repeatedly argue that if the DOE does

14  not pay the judgment in full, GIT can then come to the estate and

15  thereby cause administrative inconvenience as well as unfairness

16  among creditors.  We find that Appellees' argument is merely a red

17  herring, one that misses the point of the concern about

18  administrative inconvenience with relation to post-petition

19  interest.  It is, of course, undoubtedly true that GIT could make a

20  claim against the estate if the DOE does not pay the judgment amount

21

22      [6] Appellees suggested that it would be unfair to allow GIT to
    collect post-petition interest when other unsecured creditors may not.

23  However, the Bankruptcy Code provides that oversecured creditors may
    collect post-petition interest.  The unfairness that must be prevented

24  is unfairness unavoidable due to the bankruptcy, that is, awarding a
    windfall incident to the delay inherent in bankruptcy proceedings to

25  creditors with high interest rates.  When a creditor is repaid on its
    claim by a third party source, such as by a guarantor, or an insurance

26  company, they are receiving more than they would from the estate, but
    satisfaction by a third party does not diminish the funds available

27  in the estate for other creditors, and therefore does not cause
    unfairness.

28                                11

in full.  However, GIT already holds that right, and will continue
to hold that right regardless of whether it is entitled to collect
post-petition interest from the DOE.  The relevant question is
whether GIT will inconvenience the administration of the estate by a
ruling in its favor on post-petition interest.  Allowing post-
petition interest claims against the *estate* would inconvenience the
administration of the estate because each claim may have a different
interest rate, thereby complicating calculation of the amount of
each claim.  See In re Kielisch, 258 F.3d at 321; In re Hanna, 872
F.2d at 830.  Allowing post-petition interest against a *third party*,
however, would not result in the same burden against the estate.
Furthermore, we note that the Supreme Court has hinted, and several
lower courts have held, that solvent estates should pay not only
principal, but also interest to its creditors.  See, e.g., Bruning,
376 U.S. at 362 n. 4; In re Fast, 318 B.R. at 190; see also Matter
of Walsh, 669 F.2d at 1330.  Therefore, even the possibility of
administrative inconvenience in calculating claims is subordinate to
the principle that creditors should get their due, with some
reasonable limitations placed by the Bankruptcy Code in order to
promote fairness and administrative efficiency.

The bankruptcy court's concern that creditors may be treated
unfairly and that the administration of the estate could possibly be
inconvenienced is, of course, entitled to some deference.[7]  (AA 1541-

[7] In its order, the bankruptcy court merely states that post-
judgment interest is unmatured interest not allowable under § 502(b).
(AA 1380.)  The bankruptcy court expressed some concern over whether
unfairness or inconvenience could result from allowing GIT to collect
post-petition interest from the DOE, but we do not believe that those
concerns, articulated at the hearing and not included in the final

1542, 1550.)  However, we believe that the bankruptcy court may not have considered the Fourth Circuit's ruling in In re National Energy, which was never presented to the bankruptcy court, as well as the fact that GIT cannot and will not recover interest from the estate as a result of a ruling that it can recover interest from the DOE.  The mere possibility that GIT may be able to make a claim against the estate in the case that the DOE refuses or is unable to pay the full judgment cannot be enough to prohibit GIT from collecting post-petition interest from a third party, which does not diminish available funds in the estate or change the calculation of the amount of claims against the estate.  With that understanding, we cannot find that allowing GIT to collect post-petition interest would unduly prejudice the administration of the estate, beyond very speculative suggestions about the inconvenience of having to reject a far-fetched claim by GIT, one that GIT assured the bankruptcy court and this Court that it would not make.[8]

    In Bruning, the Supreme Court held that post-petition interest on an unpaid tax debt not discharged by bankruptcy remains a personal liability of the debtor, because an action brought against the debtor personally, rather than against the estate, "cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in

order, rise to the level of findings that we must review for abuse of discretion.

    [8] GIT was willing to state that any ability to collect the post-petition interest against the DOE "will not increase the [liability of the] Plan Committee or the Class 7 creditors beyond the [principal amount of the judgment]."  (AA 1540.)

13

1  favor of high interest creditors at the expense of other creditors."
2  Id. at 362; see also In re Foster, 319 F.3d 495, 498 (9th Cir. 2003)
3  (post-petition interest for nondischargeable child support
4  obligation is nondischargeable and may be collected personally
5  against debtor after the underlying debt is discharged in
6  bankruptcy); In re Artisan Woodworkers, 204 F.3d 888, 891-92 (9th
7  Cir. 2000) (post-petition interest on nondischargeable tax debts may
8  be recovered against a debtor after the underlying debt is
9  discharged in bankruptcy).

10        **B. Post-Petition Interest Against Non-Debtors**

11        Those cases involving debts such as child support obligations
12  or tax debts, however, may be distinguished from this case because
13  the debts on which interest accrues are not dischargeable in
14  bankruptcy and remain personal liabilities of the debtor.  Whether
15  post-petition interest may be collected against a third-party non-
16  debtor is a question that has not been decisively answered by higher
17  courts.  There has, however, been dicta that § 502(b)(2) operates
18  only on claims against the estate.  See, e.g., In re Kielisch, 258
19  F.3d at 323 ("Section 502 bars creditors from making *claims* from the
20  bankruptcy estate for unmatured interest . . . but does not purport
21  to limit the *liability* on those claims, i.e., 'debts'") (emphasis in
22  original).  At first glance, we agree that the Supreme Court's
23  explanation of the policy behind Bruning, concerns of fairness among
24  creditors and avoidance of administrative inconvenience, is not
25  implicated when third-party payment is involved.  However, because
26  this interpretation of § 502(b)(2) is not necessarily apparent from
27
28                                14

the express language of the Bankruptcy Code, we sought caselaw on
the subject of third-party post-petition interest payment.

In several cases, lower courts have allowed post-petition
interest claims against non-debtors liable for the debt after the
debtor receives a discharge.  See, e.g., Reale, 968 F. Supp. 1005,
1007 (partner liable for post-petition interest on a debt of the
partnership for which the partnership received a discharge in
bankruptcy); In re El Paso Refining, Inc., 192 B.R. 144, 146 (Bankr.
W.D. Tex. 1996) (guarantor liable for post-petition interest); In re
Stoller's, Inc., 93 B.R. 628, 635-36 (Bankr. N.D. Ind. 1988)
(guarantors liable for post-petition interest); but see Steering
Committees of Lake Road v. National Energy & Gas Transmission, Inc.,
No. AW-06-766, 2007 WL 2609430 at *3 (Bankr. D. Md. May 10, 2007)
(stating that § 502(b)(2) bars an unsecured creditor from recovering
interest on any type of claim, including an indemnity claim).
Courts have also held that when an estate is solvent, post-petition
interest may be collected from the estate.  See, e.g., In re Fast,
318 B.R. 183, 190 (Bankr. D. Colo. 2004).

The ruling of the court in Reale that a partner to a
partnership in bankruptcy is still liable for post-petition interest
on a partnership debt was based on the Supreme Court's explanation
in Bruning of the policy behind the prohibition against collecting
post-petition interest.  968 F. Supp. at 1007-09.  Because the
partner remained liable on the debt, and because fairness among
creditors and administration of the estate are not negatively
affected by the collection of post-petition interest from the

15

1   partner, the court held that § 502(b)(2) simply does not apply.   Id.

2   at 1009.

3       Because of the foregoing cases and the policy behind §

4   502(b)(2) examined in the previous section, we conclude that §

5   502(b)(2) applies only to claims made against the bankruptcy estate.

6       **C. Dependent Liabilities**

7       The conclusion that § 502(b)(2) applies only to claims against

8   the estate would appear to resolve this case.   However, one question

9   remains: whether the characterization of the DOE's obligation as

10  independent or pass-through or otherwise dependent on the debtor

11  matters for purposes of § 502(b)(2), limiting the liability of the

12  third party to the amount collectable against the debtor.[9]   In

13  —————————

14      [9] Both parties strenuously argue the issue of the relationship
    of GIT to the DOE.   GIT argues that there are facts suggesting an
15  implied-in-fact contract between GIT and the DOE.   Appellees argue
    that the facts do not show an implied-in-fact contract between GIT and
16  the DOE, and that privity is required for GIT to bring a suit directly
    against the DOE.   While we do not disagree that privity of some kind,
    be it direct contractual relationship or an implied-in-fact
17  contractual relationship, is necessary for GIT to bring suit directly
    against the DOE, we are unconvinced that these arguments have any
18  relevance to the question before the Court.   GIT has not sought to
    bring a direct action against the DOE.   It has, instead, been allowed
19  to proceed nominally against WGI, the prime contractor, and to collect
    the judgment in the name of WGI against the DOE.   The district court
20  in Colorado stated that "[l]itigation costs and costs of judgments
    under these circumstances, and in this case specifically, are the
21  obligation of the DOE."   (AA 1419.)   The court further noted that
    WGI's intervening bankruptcy does not relieve the DOE of its
22  independent obligation to pay the judgment against WGI or any
    settlement of that judgment.   (AA 1420.)   The bankruptcy court in this
23  case adopted those findings when it allowed GIT to submit its claim
    in the name of WGI to the DOE.   (AA 1381-83.)   The Federal Circuit has
24  noted that while ordinarily, subcontractors do not have standing to
    sue the government, "prime contractors often do allow subcontractors
25  to prosecute claims in the prime's name when they perceive that the
    subcontractors really have more at stake in a claim and are therefore
26  willing to work harder on its enforcement."   Erickson Air Crane Co.
    of Washington Inc. v. United States, 731 F.2d 810, 813 (Fed. Cir.
27  1984).   In insurance cases, many states do not allow an injured to

28                                      16

<u>Hathaway</u>, we stated that "[t]he insurer's liability, however, can be no greater than that of the insured" and therefore "where the insured's personal liability to the third party is limited or reduced for one reason or another, so too would the insurer's liability to the third-party be limited or reduced."  432 B.R. at 288.  The bankruptcy court likewise held in the present case that "[b]ecause any reimbursement obligation of the DOE on account of the GIT Claim is coextensive with WGI's liability, any amounts collected from the DOE on account of the GIT Claim cannot be an amount greater than what could be recovered against WGI, and any recovery from the DOE cannot be allocated to post-judgment interest." (AA 1381.)  Both our conclusion in <u>Hathaway</u>, and the bankruptcy court's holding in this case, which is based on our decision in <u>Hathaway</u>, depend on the idea that the third party's obligation is limited to the liability of the debtor, and since the debtor cannot be forced to pay post-petition interest, neither can the third party.

However, our statement in <u>Hathaway</u> that an insurer's liability must be limited or reduced when the insured's liability is limited or reduced was incorrect in light of 11 U.S.C. § 524(e), which provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt" and in light of the proposition that "[i]t is generally agreed that the debtor's discharge does not affect the

bring a suit against the insurer without naming the insured.  This does not mean, however, that a claimant may not recover the full amount of its judgment against the insurer despite bankruptcy discharge of the insured.  <u>See, e.g.</u>, <u>In re Coho Res., Inc.</u>, 345 F.3d at 342-43.  Therefore, we will not further address the parties' arguments about privity or the lack thereof.

liability of the debtor's insurer for damages caused by the debtor."
In re Coho Res., Inc., 345 F.3d 338, 343 n. 14 (5th Cir. 2003)
(quoting 4 COLLIER ON BANKRUPTCY ¶ 524.05 (Alan N. Resnick & Henry J.
Sommer eds., 16th ed.)); see also Blecher v. Lore, 76 F. App'x 811
at *2 (9th. Cir. May 12, 2003) (debtors' discharge affects only
their personal liability on a claim, and not the validity of the
liability of their insurer, and creditor may sue the debtor in order
to obtain a judgment that insurer must pay despite bankruptcy
discharge of insured); In re Walker, 927 F.2d 1138, 1142 (10th Cir.
1991) ("[sec. 524(e)] permits a creditor to bring or continue an
action directly against the debtor for the purpose of establishing
the debtor's liability when, as here, establishment of that
liability is a prerequisite to recovery from another entity.").  As
the Fifth Circuit notes, "it makes no sense to allow an insurer to
escape coverage for injuries caused by its insured merely because
the insured receives a bankruptcy discharge."  In re Coho Res.,
Inc., 345 F.3d at 343 (quoting Houston v. Edgeworth (In re
Edgeworth),993 F.2d 51, 54 (5th Cir. 1993)).  Especially in the case
of an insurer, it can be argued that the insurer's liability depends
on the insured's liability; however, the crux of the matter is that
bankruptcy proceedings do not limit that liability when no other
rule of law otherwise limits that liability.  That is, it would be
one matter if the judgment against the nominal defendant, payable by
the insurer, was reduced by state law related to the personal injury
claim.  It is another matter to attempt to limit the insurer's
liability due to a bankruptcy rule, § 502(b)(2), which primarily

18

1  exists to ensure fairness among creditors and avoidance of
2  inconvenience to the estate.

3      The monetary amount of the liability of WGI for wrongful
4  termination was decided in the District of Colorado, not in
5  bankruptcy.  The judgment in that case provided for post-judgment
6  interest, as would be customarily included.  That amount is the
7  liability of WGI, which the District of Colorado found is the
8  obligation of the DOE to pay.  The fact that WGI is in bankruptcy
9  and need not pay post-petition interest does not reduce WGI's
10 liability independent of the bankruptcy, for which a third party is
11 obligated to pay.  See Bruning, 376 U.S. at 363 n. 4 (rule against
12 interest in receivership cases "is not because the claims had lost
13 their interest-bearing quality during that period, but is a
14 necessary and enforced rule of distribution.") (citations omitted);
15 In re Coho Res., 345 F.3d at 343 ("[t]he 'fresh-start' policy is not
16 intended to provide a method by which an insurer can escape its
17 obligations based simply on the financial misfortunes of the
18 insured.") (citing In re Jet Florida Sys, Inc., 883 F.2d 970, 975
19 (11th Cir. 1989).  Sec 502(b)(2) merely prohibits GIT from
20 collecting the interest from the bankruptcy estate.  If the estate
21 is not solvent and the DOE does not pay the judgment amount, GIT
22 could recover only part of its judgment by bringing a claim against
23 the bankruptcy estate.  That does not mean that GIT can recover only
24 that part of the judgment that would be collectable in bankruptcy
25 from the DOE.  Instead, it is undisputed that GIT can recover the
26 full amount of the judgment from the DOE.  We find that prohibiting
27 GIT from collecting post-judgment interest from the DOE is

28
                                    19

unwarranted for the same reasons that GIT is not prohibited from collecting the full principal amount from the DOE despite WGI's bankruptcy.

Therefore, we conclude that whether the DOE's liability is dependent on the debtor's liability is irrelevant to the question of post-petition interest, and overrule our decision in <u>Hathaway</u> to that extent.[10]  Furthermore, we hold that the bankruptcy court, which based its decision on <u>Hathaway</u>, incorrectly applied § 502(b)(2) to prohibit GIT from collecting interest on its judgment from the DOE, a third party to the bankruptcy case.[11]

### V. Conclusion

11 U.S.C. § 502(b)(2) prohibits the collection of unmatured interest on claims against the bankruptcy estate in order to promote fairness among creditors and to avoid administrative inconvenience. DOE's obligation to pay the judgment amount, as determined by the bankruptcy court and the district court in Colorado, is not limited by that bankruptcy rule.  Thus, we disagree with the bankruptcy court's ruling, based on our previous decision in <u>Hathaway</u>, that GIT may collect principal but not interest from the DOE, a third party to the bankruptcy case.

---

[10] <u>Hathaway</u> is currently being appealed to the Ninth Circuit.

[11] We reject, however, GIT's argument that the bankruptcy court exceeded its jurisdiction by "address[ing] liabilities or inhibit[ing] collection of adjudicated obligations as between non-debtors." (Opening Br. at 17 (#16).)  It cannot reasonably be disputed that GIT's claim against the debtor and the DOE is related to the debtor's bankruptcy proceedings.

**IT IS, THEREFORE, HEREBY ORDERED** that the case is remanded to the bankruptcy court for an order directing that GIT may collect post-petition interest from the DOE.

The Clerk shall enter judgment accordingly.

DATED: September 29, 2011.

_____
UNITED STATES DISTRICT JUDGE

21